| | |
|---|---|
| KEVIN NORMAN,<br><br>      Plaintiff,<br>v.<br><br>CAPTAIN CARLA TAYLOR and<br>WARDEN DAVID OWENS,<br><br>      Defendants. | Civil Action<br>No. 16-cv-9102(NLH)<br><br>**OPINION** |

APPEARANCES:

Kevin Norman, Plaintiff Pro Se
37 Magnolia Court
Sicklerville, NJ 08081

Anne E. Walters, Esquire
Office of Camden County Counsel
520 Market Street, 14th Floor
Camden, NJ 08102
Attorney for Defendants

**HILLMAN, District Judge:**

I. <u>**INTRODUCTION**</u>

    This matter comes before the Court on the motion for summary judgment ("the Motion") of defendants, Warden David Owens and Captain Carla Taylor (collectively, "Defendants") of the Camden County Correctional Facility ("CCCF"). (D.E. 23.) The Motion is being considered on the papers pursuant to Fed. R. Civ. P. 78(b).  For the reasons set forth below, the motion for summary judgment will be granted.

## II. BACKGROUND

### A. PLAINTIFF'S ALLEGATIONS

Plaintiff was a pretrial detainee at CCCF during the period January 3, 2014 through approximately January 2016. (D.E. 1 at 4; D.E. 22-1 at 5; D.E. 22-9 at ¶4.) He is proceeding pro se with a 42 U.S.C. § 1983 civil rights complaint ("the Complaint") against the Defendants regarding the conditions of confinement during Plaintiff's incarceration at CCCF. (D.E. 1.)

Plaintiff alleges that he "was made to sleep on a thin mat on the floor," and that CCCF had "poor air quality [with] dust and dirt build-up in the cell which turned into bacteria." (D.E. 1 at 5.) He claims that he "was subjected to drinking dirty brown water" at CCCF. (*Id*. at 4.) He also contends that he brought the water situation to Defendants' attention, but that they "failed to correct the problem or find an alternative remedy." (*Ibid*.)

Plaintiff states that the alleged conditions of confinement caused him to suffer an infected scalp, a rash, headaches, dizziness, and dehydration. (*Id*. at 5-6.)

Plaintiff seeks $50,000 in damages for "pain[,] suffering[,] mental anguish[,] and physical discomfort." (*Id*. at 6.) He also asks that the Court: order water testing at CCCF; and compel CCCF to hire a full-time population control manager. (*Ibid*.)

### B. PROCEDURAL HISTORY

On March 17, 2017, this Court granted Plaintiff's IFP

2

Application and directed the Clerk of the Court to file the Complaint. (D.E. 2.) After screening Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A, the Court ordered that the Complaint's Fourteenth Amendment conditions of confinement claim against Defendants be allowed to proceed. (D.E. 4; D.E. 5.)

Defendants filed an Answer to Plaintiff's Complaint on December 19, 2017. (D.E. 15.) On January 30, 2018, Magistrate Judge Ann Marie Donio issued a scheduling order requiring that all pretrial factual discovery be concluded by June 29, 2018. (D.E. 18.) Defendants served Plaintiff with their: (1) January 30, 2018 Fed. R. Civ. P. 26 Disclosures (D.E. 22-5 at 2-29); (2) February 14, 2018 document requests (D.E. 22-6 at 2 and 11-14); and (3) February 14, 2018 interrogatories. (D.E. 22-6 at 2-10.) Defendants' Motion states that Plaintiff has not served them with any discovery responses or disclosures. (D.E. 22-1 at 6-7.)

On November 13, 2018, Defendants filed the motion for summary judgment now pending before the Court. (D.E. 22.) On December 6, 2018, Plaintiff made an oral request for extension of time to oppose the Motion. (D.E. 24.) The Court extended Plaintiff's deadline until December 17, 2018. (*Ibid*.) On December 18, 2018, Plaintiff submitted a written request for further extension of time to file opposition to the Motion. (D.E. 25.) The Court once again extended Plaintiff's deadline, this time until April 17,

2019. (D.E. 29.)  As of the date of this Opinion, Plaintiff has not filed opposition to the Motion.

**III. DISCUSSION**

Defendants move for summary judgment on three grounds: (1) Plaintiff's failure to adduce evidence from which a reasonable fact finder could find unconstitutional conditions of confinement at CCCF (D.E. 22-1 at 8-12); (2) the Complaint's mootness, in light of the Sixth and Amended Final Consent Decree in the class action *Dittimus-Bey, et al. v. Camden Cty. Corr. Facility, et al.*, Docket No. 05-cv-0063 (D.N.J.) ("*Dittimus-Bey*") (D.E. 22-1 at 14-15); and (3) Defendants' entitlement to qualified immunity, based on Plaintiff's failure to show that Defendants were aware of purported risk of serious harm or that they individually participated or acquiesced in the alleged wrongs. (D.E. 22-1 at 13-14.)

This Court finds that: for the reasons discussed in Part IV, the mootness doctrine does not apply to Plaintiff's claims for monetary relief; but for the reasons discussed in Part V, Defendants are entitled to summary judgment by virtue of the lack of a genuine dispute of material fact.  Given that summary judgment is proper, there being no proof of a constitutional violation, the Court need not address the qualified immunity defense.

4

## IV. **WHETHER THE FINAL CONSENT DECREE IN *DITTIMUS-BEY* RENDERS PLAINTIFF'S COMPLAINT MOOT**

In addition to Defendants' meritorious argument that Plaintiff has not adduced any evidence of Fourteenth Amendment violations from CCCF conditions of confinement (*see* Section V(B) below), Defendants also seeks summary judgment on the ground that the Sixth and Final Amended Consent Decree in *Dittimus-Bey* has rendered Plaintiff's Complaint moot. (D.E. 23-1 at 13-14.)

The doctrine of "mootness" derives from the limitation upon federal judicial power in Article III of the Constitution limiting jurisdiction to actual cases and controversies. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). Federal courts are limited to resolving "the legal rights of litigants in actual controversies," *Id., quoting Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (quoting *Liverpool, New York & Philadelphia S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)). Thus, "[a]n action is rendered moot when an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during the litigation." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations omitted). The test for Article III mootness is whether it has become "impossible for a court to grant any effectual relief whatever to the prevailing party." *In re ICL Holding Co., Inc.*, 802 F.3d 547,

5

553 (3d Cir. 2015) (citing *Chafin v. Chafin*, 568 U.S. 165 (2013)). Therefore, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016).

It is true that Plaintiff does not contest the *Dittimus-Bey* litigation and its effects on CCCF conditions, as characterized in Defendants' undisputed Brief In Support of Motion for Summary Judgment. (D.E. 22-1 at 15.) For example, Camden County and CCCF officials agreed to consent decrees in *Dittimus-Bey* to take measures to improve the conditions at the CCCF, such as by retaining criminal justice consultants to investigate and recommend solutions to the CCCF's overcrowding and staffing problems. (*Id*.) Defendants' undisputed characterizations of facts (*id*.) show significant and systemic improvements as to both overcrowding and related conditions at CCCF. Plaintiff is not presently confined at CCCF, and the successful *Dittimus-Bey* class action litigation has placed the challenged conditions at CCCF under review, resulting in appreciable changes for those confined at CCCF. That these facts from *Dittimus-Bey* are uncontested here by Plaintiff Norman is merely further demonstration that summary judgment is appropriate.

The Court is not persuaded, however, that the final consent decree in *Dittimus-Bey* in and of itself moots Plaintiff's case. Plaintiff, a class member in *Dittimus-Bey*, is bound by the final

judgment in which class members are deemed to release claims for injunctive and declaratory relief against Camden County and its officers and employees. This means that Mr. Norman, like all class members, could no longer obtain injunctive relief beyond that authorized in the Consent Decree for jail conditions during the class period. But that litigation did not involve individual inmates' or detainees' claims or class claims for money damages, which must be sought and proved on an individual claim basis. In other words, the Final Consent Decree in *Dittimus-Bey* did not adjudicate or deal with any individual money damage claims. That Consent Decree does not extinguish the possibility that constitutional violations occurred to individuals during the class period. Indeed, claims for money damages were not sought in *Dittimus-Bey* and inmates were free to pursue individual claims for monetary relief under 42 U.S.C. § 1983 by filing an individual complaint, as Mr. Norman has done. Accordingly, to the extent that Defendants argue that Plaintiff's claim for money damages is mooted by the final Consent Decree in *Dittimus-Bey*, the mootness argument lacks merit and is denied.

## V. MOTION FOR SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

7

Civ. P. 56(a).

Where, as in this case, the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment by observing that there is an absence of evidence to support an essential element of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Rahman v. Taylor*, 2013 WL 1192352, at *2-3 (D.N.J. Mar. 21, 2013). Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. A plaintiff opposing a defendant's motion for summary judgment has the burden of coming forward with evidence, not mere allegations, that would raise a genuine dispute of material fact and suffice to enable a reasonable jury, giving all favorable inferences to the plaintiff as the party opposing summary judgment, to find in plaintiff's favor at trial. Rule 56(c)(1)(A) further provides that, to create a genuine issue of material fact, the nonmovant must do so by:

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

Fed. R. Civ. P. 56(c)(1)(A). However, failure to respond to a motion for summary judgment "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Island Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). The Court still must determine, even for an unopposed summary judgment motion, whether the motion has been properly made and supported and whether granting summary judgment is appropriate. *Id*.

In order to grant Defendants' unopposed motion for summary judgment, where, as here, "the moving party does not have the burden of proof on the relevant issues, ... the district court must determine that the deficiencies in opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id*. at 175. Additionally, pursuant to Local Civ. R. 56.1(a), Defendants' statement of material facts, having not been admitted, denied or addressed by Plaintiff in any other fashion, is deemed undisputed for the purposes of this Motion. In the present case, Mr. Norman has failed to oppose this summary judgment motion and where he has failed to supply responses to routine interrogatories and document requests in the course of discovery. There is thus no basis to look beyond the Defendants' proper submissions, including their Rule 56.1 statement of undisputed material facts, to determine whether summary judgment should be granted in Defendants' favor.

After review of the record and the parties' submissions on the Motion, this Court finds that entry of summary judgment is appropriate.

**B.  PLAINTIFF HAS FAILED TO COME FORWARD WITH ANY EVIDENCE SUPPORTING HIS CLAIM OF UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT**

**1.  The Record In This Case As To Conditions At CCCF**

The evidentiary record here consists of what Defendants attached to the Motion. Plaintiff has provided the Court only with pleadings that contain a mix of facts and legal conclusions (D.E. 1.) The Complaint attaches no affidavits, certifications, or exhibits. Mere pleadings are insufficient to defeat summary judgment. *Rahman*, 2013 WL 1192352, at *3. The ample time for completing factual discovery has expired. (D.E. 18.)

Defendants' Initial Disclosures suggest that Plaintiff was detained in CCCF starting on January 4, 2014. (D.E. 22-5 at 5.) Plaintiff's Complaint alleges a similar date. (D.E. 1 at 4 ("January 3, 2014").) This fact makes Plaintiff a member of the certified class in the matter of *Dittimus-Bey*. (D.E. 23-9 at ¶9.) In *Dittimus*-Bey, the plaintiffs had alleged several conditions of "unhealthy, unsafe, and unsanitary environment . . . [a]s a direct result of severe overcrowding and understaffing" at CCCF. (*Dittimus-Bey v. Taylor*, No. 05-0063 (D.N.J. June 30, 2017) (D.E. 60 at 4 and 7).) As noted in the *Dittimus-Bey* Sixth and Amended Final Consent Decree, CCCF's population "reached a crisis point in

early 2013" (D.E. 23-9 (Consent Decree) at ¶35), after which the daily population at CCCF was closely monitored and managed over time to appropriate levels for resolution of the *Dittimus-Bey* claims. (*Id*. at ¶¶36-37.)

In this case, Defendants do not appear to contest Plaintiff's claim (D.E. 1 at 4-5) that he was housed at CCCF in an overcrowded cell. Neither party has provided the Court with specific evidence of Mr. Norman's particular cell assignments during his period of detention. Thus, the Court will assume, for purposes of this Motion only, that Plaintiff was housed in overcrowded conditions at some point during the period of his January 2014 through January 2016 detention. Population data suggests that, at "crisis points" during Plaintiff's detention, the average two-person CCCF cell in fact contained three persons, one of whom had to temporarily sleep on the floor mattress, while two occupied bunk beds. Nevertheless, the *Dittimus-Bey* Sixth and Final Amended Consent Decree reflects the fact that the overcrowding issues were being addressed during the time of Plaintiff's incarceration at the CCCF. (D.E. 22-8 at ¶¶33-37 and 44-60.)

Defendants assert though that, based on the underlying facts and on Plaintiff's failure to provide evidence supporting his contentions, he fails to state a claim or raise a dispute of material fact as to any Fourteenth Amendment violation. (D.E. 22-1 (Def. Br.) at 8-12.) Defendants contend that Plaintiff has

11

adduced no demonstration of unconstitutional conditions. (*Id*. at 10–12.)

### 2. Governing Law As To Conditions Of Confinement Claim

The mere fact that an individual is lodged temporarily in a cell with more persons than its intended design does not, on its own, rise to the level of a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348-50 (1981) (holding double-celling by itself did not violate Eighth Amendment); *Carson v. Mulvihill*, 488 F. App'x 554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not constitute punishment, because there is no 'one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment'") (quoting *Bell*, 441 U.S. at 542)). More is needed to demonstrate that such crowded conditions, for a pretrial detainee, "shock the conscience," and thus violate due process rights. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (noting that due process analysis requires courts to consider whether the totality of the conditions "cause[s] inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them").

### 3. Plaintiff Fails To State A Claim Or Raise A Disputed Material Fact As To Conditions Of Confinement

Plaintiff has adduced no evidence that the conditions he experienced while incarcerated in a purportedly overcrowded cell were so severe that they "shock the conscience." *See Hubbard*, 538 F.3d at 233. Similarly, being "made to sleep on a mat" (D.E. 1 at

5) where there was "dust and dirt build-up in the cell" (*ibid*.) does not, standing alone, rise to the level of a due process violation.

*No Showing Of An Unconstitutional Deprivation Of A Basic Human Need*: Plaintiff's cursory allegations regarding sleeping on a "thin mat" in an "overcrowded [cell] [with] four people" (D.E. 1 at 5) essentially complain of an inconvenient and uncomfortable situation. His contention about "poor air quality" and dirty cells (*ibid*.) fails to state a claim of constitutional magnitude. "[T]he Constitution does not mandate comfortable prisons." *Carson*, 488 F. App'x at 560 (quoting *Rhodes*, 452 U.S. at 349). "To the extent that such conditions are harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.

Without more, the Court cannot say that a reasonable fact finder could conclude that the conditions Plaintiff references deprived him of any basic human needs. Even affording Plaintiff the benefit of the doubt as to his unsubstantiated statements about air and dirt (D.E. 1 at 5), he adduces no evidence that, for example: he was sickened by the conditions he describes; "four people [in] a cell" (D.E. 1 at 5) in fact led to any assault of him by another inmate; or he was significantly sleep-deprived due to these conditions. *See*, *e.g.*, *Williams v. Meisel*, 2014 WL 4744561, at *4 (E.D. Pa. Sept. 24, 2014) (finding that mold in showers did not amount to a constitutional violation because the

13

mold did not expose inmates to an unreasonable risk of serious damage to future health). Rashes and headaches from incarceration (D.E. 1 at 5) fall short of conscience-shocking conduct.

By way of another example of the insufficiency in Plaintiff's claim, his CCCF incarceration file does not contain any records indicating any grievances or damages he suffered, medical or otherwise, from alleged overcrowding. (*See* D.E. 23-8 at ¶4; D.E. 23-6 at 6-50.) Plaintiff offers no evidence to substantiate his Complaint's contention that he suffered "dizziness, dehydration, [and] stomach pains." (D.E. 1 at 6.) Nothing in the record before this Court demonstrates that the purported injuries in fact occurred and were caused by the allegedly unconstitutional conditions of confinement.

Finally, as to absence of conscience-shocking conditions, the Court notes Plaintiff's contention that "there were a few dozen occasions where I had no other choice but to consume brown-colored water." (D.E. 1 at 6.) The Court recognizes that "there is no doubt that potable water constitutes a basic human need and that water that is suitable for drinking and bathing be supplied to inmates." *Wolfe v. Christie*, No. 10-2083, 2013 WL 3223625, at *5 (D.N.J. June 25, 2013) (internal citations omitted). However, the temporary "few dozen occasions" (D.E. 1 at 6) of "unclean water" that Plaintiff may have found unsettling, upsetting or uncomfortable do not satisfy the requisite constitutional test. A Due Process claim for denial of the minimal civilized measure of

14

life's necessities has two prongs. Plaintiff meets neither.

The first prong is the "sufficiently serious" objective prong, under which the challenged conditions must be objectively serious and must result in the denial of the minimal civilized measure of life's necessities when viewed within the context of contemporary standards of decency. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The second prong is the "sufficiently culpable state of mind" subjective prong, under which a defendant must have demonstrated a deliberate indifference to the well-being of a plaintiff. *Estelle v. Gamble*, 429 U.S. 104, 106 (1976); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

Plaintiff has not provided evidence demonstrating the nature, severity, cause, or degree of the "brown colored water" of which he complains. (D.E. 1 at 6.) Nor has he shown that he suffered any objectively verifiable injury for the "few dozen occasions" of which he complains. His unsubstantiated contentions about his personal impressions of water color at CCCF do not establish that he was denied "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. He has not demonstrated that CCCF water quality was, in fact, unconstitutionally unacceptable or that it caused his alleged "physical discomfort" and "stomach pains." (D.E. 1 at 6.) Thus, Plaintiff has failed to create any disputed issue of fact as to the objective standard of

15

the Fourteenth Amendment test.

Furthermore, Plaintiff has provided no requisite facts suggesting that any Defendants were deliberately indifferent and motivated by ill will with respect to CCCF water quality. Thus, Plaintiff also has failed to satisfy the subjective standard of the Fourteenth Amendment test. Plaintiff's personal dissatisfaction with CCCF water cannot provide a basis for a constitutional claim. His impressions of CCCF water color, and his supposition that such was responsible for his alleged dizziness and dehydration, do not suggest a deprivation of constitutional magnitude. They also do not rule out the possibility that water problems such as he alleges were due to temporary plumbing issues. *See Pritchett v. Camden Cty. Corr. Facility*, No. 16-cv-08241, 2018 WL 1522713, at *4-5 (D.N.J. Mar. 28, 2018) ("the mere fact that the water hue in a jail cell was somewhat different (on isolated occasions during a discrete period of time) from the color to which Plaintiff was otherwise accustomed, is not, without more, sufficient to rise to the level of a constitutional violation"). *See also Passmore v. Ianello*, 528 F. App'x 144, 149 (3d Cir. 2013) ("[C]ourts will generally not interfere with prison administrative matters"). Thus, Plaintiff has failed to create any disputed issue of fact as to the subjective standard of the Fourteenth Amendment test.

*No Demonstration Of Deliberate Indifference*: Defendants further assert that the *Dittimus-Bey* class-action litigation

16

remediated overcrowding and conditions of confinement at CCCF. (D.E. 22-1 at 14-15.) Indeed, as a result of the *Dittimus-Bey* litigation[1], there has been a significant lessening of the crowding in CCCF and improvements in other prison conditions. (D.E. 22-8 (Consent Decree) at ¶¶36-37.) When the *Dittimus-Bey* litigation commenced in 2005, CCCF's average daily population was 1,848 inmates; by May of 2010, the average monthly population reached an all-time low of 1,232 inmates. (D.E. 22-8 at ¶¶33-34.) Roughly four months prior to Plaintiff's release from CCCF in April 2017, CCCF's population as of December 9, 2016 was at 1,160 -- in a facility designed for 1,267 persons. (D.E. 22-8 (Consent Decree) at ¶¶33-34, 36.) While it is conceivable that an individual inmate could be subjected to unconstitutional conditions even at a jail that is continuously monitored and operating within reasonable capacity limits, Plaintiff has not adduced any evidence that he has actually suffered such deprivation.

These undisputed facts refute any claim that Defendants or other supervisors at CCCF were "deliberately indifferent" to the alleged constitutional violations, which is the mental culpability that must be proven to find liability under § 1983. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007)

---

[1] Order Approving Amended Final Consent Decree, *Dittimus-Bey v. Taylor*, No. 05-0063 (D.N.J. June 30, 2017); *see also Dittimus-Bey v. Taylor*, 2013 WL 6022128 (D.N.J. Nov. 12, 2013); *Dittimus-Bey v. Taylor*, 244 F.R.D. 284 (2007). The Court does not imply that Plaintiff's claims for monetary relief in this case (ECF No. 1 at 6) are barred by the class action settlement of *Dittimus-Bey*, since that case only involved claims for injunctive relief.

(describing the "deliberate indifference" standard). There is no evidence of conduct that would tend to show deliberate indifference on the part of Defendants.

For all of these reasons, Defendants are entitled to summary judgment on Plaintiff's overcrowded conditions of confinement Fourteenth Amendment claim. In addition, since Plaintiff is no longer confined at CCCF, injunctive relief is unavailable to him. *See Abdul-Akbar v. Watson,* 4 F.3d 195, 197 (3d Cir. 1993) (a prisoner lacks standing to seek injunctive and declaratory relief if he is no longer subject to the alleged conditions).

### C. **WHETHER CLAIMS AGAINST DEFENDANTS MUST BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY**

In addition to the grounds discussed in Sections IV and V(B) of this Opinion, Defendants also request that this Court grant summary judgment on the basis of qualified immunity. (D.E. 22-1 at 13-14 (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007), and *Rode v. Dellaciprete*, 845 F.2d 1195 (3d Cir. 1988).)

Qualified immunity protects government officials from liability as long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). The qualified immunity test is two-pronged: whether the pleadings allege that constitutional violation occurred, and whether "reasonable officials could

fairly have known that their alleged conduct was illegal." *Saucier v. Katz*, 533 U.S. 194, 121 (2001); *Larsen v. Senate of the Commonwealth of Pa.*, 154 F.3d 82, 86 (3d Cir. 1998).

Given that Plaintiff fails to demonstrate a basis for a constitutional violation, there is no need to address whether a reasonable official would know his conduct was unlawful, due to no proof of such illegality.

## VI. CONCLUSION

For the reasons stated above, the Defendants' motion for summary judgment will be granted. An accompanying Order will be entered.


| **August 12, 2019** | **s/ Noel L. Hillman** |
|---|---|
| Date | NOEL L. HILLMAN |
| | U.S. District Judge |
| At Camden, New Jersey | |